## UNITED STATES v. HY–GRADE MATCH CO. et al.

District Court, S. D. New York.

Feb. 13, 1937.

Lamar Hardy, U. S. Atty., of New York City (Thomas McCall, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Thomas E. White, of New York City (William E. Robinson, of New York City, of counsel), for defendant Fidelity & Deposit Co. of Maryland.

BYERS, District Judge.

The question for decision is whether a warehouse entry bond of the defendant, as surety, was breached where the goods did not enter a bonded warehouse, and therefore were not "regularly withdrawn within three years from public store or bonded warehouse."

The bond was executed and delivered in order to insure the payment of "the full amount of duties and charges due on the articles imported, if the same were" regularly withdrawn, as in the words above quoted.

Concededly the shipment of matches here involved on February 15, 1932, was moved directly from the pier under duty-paid permits upon the payment of estimated duties in the sum of $8,968.80, while the figure established upon final liquidation and determination was $10,162.40.

This suit is for the difference of $1,193.60.

The importer has made default.

The surety urges that its liability never attached because of the fortuitous circumstance that (apparently as a matter of convenience and economy) the ceremony was omitted of hauling the import to a bonded warehouse and out again. It is clear that the defendant's position is technical in the extreme. It gave a bond the primary purpose of which was to insure the payment of import duty, and that duty, in part, has not been paid. True the payment was guaranteed only upon a specified class of merchandise, namely, such as should go into a bonded warehouse pending liquidation and withdrawal.

It is necessary to inquire therefore whether this merchandise was ever constructively in a bonded warehouse.

Reliance is had for the plaintiff on article 900 of Customs Regulations of 1931, reading as follows: "All or any part of the merchandise covered by a warehouse entry may also be withdrawn for transportation immediately and before liquidation without deposit in a bonded warehouse, and pending examination, appraisal and liquidation, may be permitted to remain on the vessel or other vehicle or on the pier, which places may be deemed constructive warehouses."

Authority for making necessary regulations "for the establishment of bonded warehouses and to protect the interests of the Government" in their conduct and in the withdrawal of merchandise therefrom is found in title 19 U.S.C. § 1556 (19 U.S. C.A. § 1556).

In the preceding section (1555) the law says: "Buildings or parts of buildings and other inclosures may be designated by the Secretary of the Treasury as bonded warehouses for the storage of imported merchandise entered for warehousing," etc.

This statute distinguishes between private and public bonded warehouses and continues: "Before any imported merchandise not finally released from customs custody shall be stored in any such premises, the owner or lessee thereof shall give a bond," etc., to protect the government against loss or expense in connection with the deposit, storage, etc., of the merchandise therein.

The remaining provisions of section 1555 seem not to require recital, since sufficient has been shown to indicate generally the statutory concept of a bonded warehouse.

It is necessary to decide whether, within the requirements of this case, it may be thought that the Secretary of the Treasury was empowered by Congress not only to promulgate regulations touching the establishment and conduct of warehouses, and the withdrawal of merchandise therefrom, but also to establish "constructive" warehouses, namely, the pier from which this shipment was removed.

It must be conceded that the statute does not in terms deal with "constructive" warehouses, and whether "constructive" bonds may be exacted on behalf of "constructive" warehouses, is entirely a matter of conjecture so far as this record is concerned.

The Supreme Court has said that a cognate law did not confer legislative powers upon the Secretary. International Ry. Co. v. Davidson, 257 U.S. 506, at page 514, 42 S.Ct. 179, 182, 66 L.Ed. 341. Again, that departmental regulations are "valid unless unreasonable or inconsistent with the statute." Fawcus Machine Co. v. U. S., 282 U.S. 375, 51 S.Ct. 144, 145, 75 L.Ed. 397.

These expressions seem to indicate that, while the legislative purpose may not be rewritten and expanded by administrative fiat, nevertheless the experience, as embodied in regulations, of those whose duty it is to deal with the enforcement of a law is to be accepted in defining the scope of a statute, unless the plain requirements of reason and consistency otherwise operate.

If this case involved the essential rights or responsibilities with which these statutes deal, it is conceivable that the challenge of section 900 of the Regulations would invite a sympathetic skepticism which is wholly absent from the cause as it is presented.

The defendant gave its bond to secure the payment of these taxes, and unless the constructive warehouse practice here employed may be said to have struck at the essential nature of its undertaking, there seems to be neither principle nor authority to justify permitting defendant to evade its contract.

Accordingly a verdict is directed for the plaintiff, upon which judgment may be entered.